# In the United States Court of Federal Claims

| | |
|---|---|
| **REBECCA SHAFFER,**<br><br>*Plaintiff,*<br><br>v.<br><br>**THE UNITED STATES,**<br><br>*Defendant.* | No. 25-15<br>(Filed: October 30, 2025) |

*Altom M. Maglio*, *Jeffrey C. Nelson*, mctlaw, Sarasota, Florida and Washington, D.C., for Plaintiff.

*Nathanael B. Yale*, Senior Trial Counsel, *Yariv S. Pierce*, Trial Attorney, *Eric P. Bruskin*, Assistant Director, *Patricia M. McCarthy*, Director, Commercial Litigation Branch, *Brett A. Shumate*, Assistant Attorney General, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

## OPINION AND ORDER

**HADJI,** *Judge.*

Plaintiff is a landlord seeking compensation from the Government arising from her inability to evict a delinquent tenant due to the Centers for Disease Control and Prevention's (CDC) Eviction Moratorium. *See generally* ECF 1. Plaintiff alleges she is owed money from the Government either as a Fifth Amendment taking, or alternatively as an illegal exaction. *See* ECF 1 at 5-6. Before the Court is the Government's Motion to Dismiss for failure to state a claim upon which relief can be granted, under Court of Federal Claims Rule 12(b)(6). *See generally* ECF 18. For the reasons that follow, Plaintiff's takings claim survives while the illegal exaction claim fails. Accordingly, the Motion to Dismiss (ECF 18) is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

### I. Facts Alleged in the Complaint

Plaintiff is the owner of a single-family home in Pittsburgh, Pennsylvania, which she leases as a residence. ECF 1 ¶ 1. Plaintiff leased the residence to a single tenant, who occupied the residence from August 1, 2019, until late June 2021. ECF 1 ¶¶ 2, 8. The tenant paid rent and complied with the lease terms through June 2020. *See* ECF 1 ¶ 3. When the tenant did not pay rent for July, August, and September 2020, Plaintiff filed an eviction

action in the Magisterial District Court of the Commonwealth of Pennsylvania on September 11, 2020. ECF 1 ¶¶ 4-5. In response, the tenant emailed Plaintiff a "Declaration for the Centers of Disease Control and Prevention's Temporary Halt in Evictions to Prevent Further Spread of COVID-19," and Plaintiff confirmed receipt to the Pennsylvania court. ECF 1 ¶¶ 6-7. The tenant continued to delay eviction in this manner from September 2020, until a judgment issued in Plaintiff's favor on June 29, 2021. ECF 1 ¶ 8.

## II.   Facts from the Public Record[1]

On August 8, 2020, in response to the COVID-19 pandemic, the President issued Executive Order 13945, titled "Fighting the Spread of COVID-19 by Providing Assistance to Renters and Homeowners." 85 Fed. Reg. 49935 (Aug. 8, 2020). As relevant here, Section 3(a) of the Executive Order directed the Secretary of Health and Human Services and CDC Director to "consider whether any measures temporarily halting residential evictions of any tenants for failure to pay rent are reasonably necessary to prevent the further spread of COVID-19 from one State or possession into any other State or possession." *Id.*

In response to the Executive Order, the CDC issued an order titled "Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19" (the Eviction Moratorium).[2] 85 Fed. Reg. 55292 (Sept. 4, 2020). The CDC cited section 361 of the Public Health Service Act, 42 U.S.C. § 264(a), as the authority for the order. *See id.* at 55292-93 (titled in part, "Order Under Section 361 of the Public Health Service Act (42 U.S.C. 264) and 42 CFR 70.2"). The Eviction Moratorium provided that:

> [A] landlord, owner of a residential property, or other person with a legal right to pursue eviction or possessory action shall not evict any covered person from any residential property in any State or U.S. territory in which there are documented cases of COVID-19 that provides a level of public-health protections below the requirements listed in this Order.

*Id.* at 55296. But it did not relieve tenants of their obligation to pay rent. *Id.* at 55294 ("This Order does not relieve any individual of any obligation to pay rent, make a housing payment, or comply with any other obligation that the individual may have under a tenancy, lease, or similar contract."). In fact, it allowed landlords to charge "fees, penalties, or interest" to delinquent tenants. *Id.* at 55292 ("Nothing in this Order precludes the charging or collecting of fees, penalties, or interest as a result of the failure to pay rent or other housing payment on a timely basis, under the terms of any applicable contract."). It additionally noted that landlords who evicted tenants in violation of the order could be

---

[1] This section recounts the government actions underlying Plaintiff's claim. The Court takes judicial notice of these facts. *See Sebastian v. United States*, 185 F.3d 1368, 1374 (Fed. Cir. 1999) ("In deciding whether to dismiss a complaint under Rule 12(b)(6), the court may consider matters of public record.").

[2] Like the Government, the Court uses the term "Eviction Moratorium" to refer generally to the initial CDC order halting residential restrictions, as well as subsequent modifications and extensions of that order.

subject to criminal penalties "[u]nder 18 U.S.C. 3559, 3571; 42 U.S.C. 271; and 42 CFR 70.18." *Id.* at 55296.

Right before the Eviction Moratorium was set to expire, Congress extended it through January 31, 2021, in the Consolidated Appropriations Act, 2021. *See* Pub. L. 116-260, § 502, 134 Stat. 1182, 2078-79 (2020). That was the only extension Congress provided to the Eviction Moratorium.

In February 2021, the CDC issued a supplemental order to extend the Eviction Moratorium through March 31, 2021. 86 Fed. Reg. 8020 (Feb. 3, 2021). The CDC went on to further extend the Eviction Moratorium by regulation three more times, ultimately setting a final expiration date of October 3, 2021. *See* 86 Fed. Reg. 16731 (Mar. 31, 2021); 86 Fed. Reg. 34010 (June 28, 2021); 86 Fed. Reg. 43244 (Aug. 6, 2021). But before the Eviction Moratorium expired on its own, in May 2021, it was struck down for exceeding the CDC's statutory authority under the Public Health Service Act (42 U.S.C. § 264(a)); the judgment was stayed pending appeal. *Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 539 F. Supp. 3d 211, 218 (D.D.C. 2021). The Supreme Court, after two appeals of that stay order, ultimately vacated the stay, effectively terminating the Eviction Moratorium. *See Alabama Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 759 (2021). While that decision did not formally reach the merits, the Supreme Court noted that the challengers were "virtually certain to succeed on the merits of their argument that the CDC ha[d] exceeded its authority." *Id.*

## LEGAL STANDARD

The Government moved to dismiss this suit pursuant to Court of Federal Claims Rule 12(b)(6).[3] Rule 12(b)(6) permits the Court to dismiss an action for failure to state a claim upon which relief may be granted. Dismissal is proper under Rule 12(b)(6) "when a complaint does not allege facts that show the plaintiff is entitled to the legal remedy sought." *Steffen v. United States*, 995 F.3d 1377, 1379 (Fed. Cir. 2021). The Court "must accept as true all the factual allegations in the complaint and … must indulge all reasonable inferences in favor of the non-movant." *Fishermen's Finest, Inc. v. United States*, 59 F.4th 1269, 1274 (Fed. Cir. 2023). However, "pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). To survive a challenge pursuant to Rule 12(b)(6), a plaintiff must plead more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." *Id.*

## DISCUSSION

Plaintiff argues that the Eviction Moratorium constituted an uncompensated physical taking under the Fifth Amendment Takings Clause, or alternatively, that it

---

[3] Court of Federal Claims Rule 12(b)(6) is the same as Federal Rule of Civil Procedure 12(b)(6). *Compare* RCFC 12(b)(6) *with* Fed. R. Civ. P. 12(b)(6).

constituted an illegal exaction. The Court addresses each claim in turn, finding that the takings claim survives while the illegal exaction claim fails.

### I.      Plaintiff States a Claim for a Fifth Amendment Taking under *Darby*

The Takings Clause of the Fifth Amendment to the United States Constitution provides: "nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Federal Circuit has laid out the requirements for a physical taking claim:

> A physical taking of land occurs when the government itself occupies the property or requires the landowner to submit to physical occupation of its land, *Yee v. City of Escondido,* 503 U.S. 519, 527 (1992), whether by the government or a third party, *see Preseault v. United States,* 100 F.3d 1525, 1551 (Fed. Cir. 1996) (en banc).

*Forest Props., Inc. v. United States,* 177 F.3d 1360, 1364 (Fed. Cir. 1999) (internal quotation marks and parallel citations omitted). "[G]overnment-authorized invasions of property … are physical takings requiring just compensation." *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 152 (2021). And when a "regulation appropriates a right to physically invade [one's] property," it constitutes "a *per se* physical taking." *Id.*

To evaluate Plaintiff's physical takings claim, the Court considers two questions: (1) whether the Eviction Moratorium was authorized, and if so, (2) whether it enacted a per se physical taking of Plaintiff's property. The answers to these questions are controlled by the Federal Circuit's decision in *Darby Dev. Co., Inc. v. United States*, 112 F.4th 1017 (Fed. Cir. 2024). Because *Darby* answered both these questions in the affirmative, this Court must conclude that Plaintiff's physical takings claim survives the motion to dismiss.

In *Darby*, a group of property owners raised a near-identical Fifth Amendment takings claim based on the Eviction Moratorium. *See id.* The Federal Circuit held that the Eviction Moratorium was authorized for taking purposes because "the CDC issued the Order within the normal scope of its duties, and because it did not contravene any explicit prohibition or positively expressed congressional intent in so doing." *Id.* at 1029. Further, the *Darby* Court held that the Eviction Moratorium effected a per se physical taking under *Cedar Point Nursery v. Hassid*, 594 U.S. 139 (2021). *Id.* at 1034. In *Cedar Point*, the Supreme Court held that a California regulation allowing union organizers to "take access" to agricultural properties for specific periods of time constituted a per se physical taking. 594 U.S. at 152. And "just as the *Cedar Point* regulation resulted in government-authorized physical invasion" by "appropriat[ing] for the enjoyment of third parties the employers' right to exclude," the Eviction Moratorium removed landlords' ability to evict delinquent tenants, "result[ing] in government-authorized invasion, occupation, or appropriation of their property." *Darby*, 112 F.4th at 1034 (internal quotation marks omitted).

The Government in this case concedes that it raises the same arguments rejected in *Darby*. *See* ECF 18 at 8 ("[T]o preserve our rights should further review be sought [at the Supreme Court], we continue to raise the arguments addressed by the Federal Circuit in *Darby*…."). But "the Court of Federal Claims may not deviate from the precedent of the … Federal Circuit any more than the Federal Circuit can deviate from the precedent of the … Supreme Court." *Crowley v. United States*, 398 F.3d 1329, 1335 (Fed. Cir. 2005). Because the Government has not raised argument to distinguish this case from *Darby*, and the Court finds no such distinction, this Court is bound by *Darby*. Therefore, this Court must conclude that Plaintiff has stated a Fifth Amendment takings claim sufficient to survive a motion to dismiss.

## II. Plaintiff Fails to State a Claim for an Illegal Exaction

The Court turns next to Plaintiff's alternative illegal exaction claim. That claim is self-consciously contingent on future events. *See* ECF 19 at 19 ("In the event this or another court rules that the Eviction Moratorium was 'unauthorized,' … that ruling will complete the elements needed for [Plaintiff] to state a claim for an 'illegal exaction.'"). Because this Court makes decisions based on current law and not speculation, this claim must be dismissed at this time. But even if the Supreme Court were to overrule *Darby* in the exact manner required to support Plaintiff's illegal exaction claim, the merits of the claim would nonetheless fail for not alleging payment of a government obligation.

The Federal Circuit summarized the requirements for illegal exaction claims in *Aerolineas Argentinas*:

> [A]n illegal exaction claim may be maintained when the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum that was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or a regulation. The Tucker Act provides jurisdiction to recover an illegal exaction by government officials when the exaction is based on an asserted statutory power.
>
> …
>
> The amount exacted and paid may be recovered whether the money was paid directly to the government, or was paid to others at the direction of the government to meet a governmental obligation.

*Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572-73 (Fed. Cir. 1996) (internal citations and quotation marks omitted). "The essence of an illegal exaction is when the government has the citizen's money in its pocket." *Columbus Reg'l Hosp. v. United States*, 990 F.3d 1330, 1348 (Fed. Cir. 2021) (internal quotation marks omitted). But there is no illegal exaction where the Government prevents money from entering a plaintiff's account.

*See Piszel v. United States*, 833 F.3d 1366, 1382 (Fed. Cir. 2016) (citing *Westfed Holdings, Inc. v. United States*, 52 Fed. Cl. 135, 153 (2002)).

Plaintiff's Complaint states a bare allegation that "[a]s a direct result of the CDC's Eviction Moratorium, the federal government has exacted [Plaintiff]'s private property, [and] enriched the federal government at her expense…." ECF 1 ¶ 32. Rather than allege a direct payment to the Government, Plaintiff rests her claim on the fact that she "'in effect' paid money to the Government by covering her tenant's housing costs, at the Government's direction and in fulfillment of a governmental purpose." *See* ECF 19 at 20. The Government contends that Plaintiff's claim fails to allege a payment—the essence of an illegal exaction. ECF 22 at 4. Therefore, the Government says, Plaintiff's claim must fail. ECF 18 at 19 (citing *Piszel v. United States*, 833 F.3d 1366, 1382 (Fed. Cir. 2016)). The Court agrees. Plaintiff has not alleged that *she* made any specific payments to the Government or any third-party. But even if the Court were to construe the "covering [of] her tenant's housing costs" as a payment, Plaintiff's illegal exaction claim would still fail because any such "payment" did not satisfy any government obligation.

*Aerolineas Argentinas* provides an illustrative example of what an "in effect" exaction can look like. That case dealt with the statutory regime governing responsibility for the costs to house asylum seekers. *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1568 (Fed. Cir. 1996). Prior to passage of the 1986 Immigration User Fee Statute, Pub. L. No. 99–591, § 205, 100 Stat. 3341-53 (1986), airlines found themselves fronting the costs of housing asylum seekers who arrived on their flights. *Aerolineas Argentinas*, 77 F.3d at 1570. Congress passed that statute to shift the financial obligation onto the Immigration and Naturalization Service (INS), yet INS continued to enforce an outdated regulation requiring airlines to bear the costs. *Id.* at 1571. The Federal Circuit held that the Government had illegally exacted money from the airlines by unlawfully burdening the airlines with the Government's statutory obligation to cover those costs. *Id.* at 1568, 1578. In essence, "the government ha[d] 'in its pocket' money corresponding to the payments that were the government's statutory obligation." *Id.* at 1573; *see also Casa de Cambio Comdiv S.A., de C.V. v. United States*, 291 F.3d 1356, 1364 (Fed. Cir. 2002) (referring to the *Aerolinea Argentinas* obligations as "costs that the government had a legal duty to bear").

Here, Plaintiff fails to allege an appropriate legal obligation fulfilled by her alleged absorption of housing costs, as required by *Aerolineas Argentinas*. Instead of identifying a government obligation, Plaintiff says she covered her tenant's housing costs "in fulfillment of a government purpose." ECF 19 at 20. But policy objectives, as enshrined in regulations like the Eviction Moratorium, do not have the same effect as statutory obligations. Unlike in *Aerolineas Argentinas*, there is no money in the government's pocket that would have been spent on the relevant costs borne by Plaintiff. *See Aerolineas Argentinas*, 77 F.3d at 1573. To be sure, Congress appropriated funds for emergency rental assistance for landlords with delinquent tenants. *See* Consolidated Appropriations Act, 2021, Pub. L. 116-260, § 501, 134 Stat. 1182, 2069-73 (2020). But the potential availability of

reimbursement for unpaid rent is unrelated to the alleged costs underlying Plaintiff's illegal exaction claim. With no alleged direct payment to the Government and no statutory obligation allegedly fulfilled by Plaintiff, her illegal exaction claim fails, regardless of the outcome of the *Darby* appeal.

## CONCLUSION

For the foregoing reasons, the Government's Motion to Dismiss (ECF 18) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's illegal exaction claim is hereby **DISMISSED**. The parties shall **FILE** a Joint Preliminary Status Report, in accordance with Appendix A of the Rules of the Court of Federal Claims, no later than 49 days after the date of this opinion and order.

**IT IS SO ORDERED.**

PHILIP S. HADJI
Judge